UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | No. 6:12-CR-59-KKC-HAI-3 |
| v. | ) ) | RECOMMENDED DISPOSITION |
| RONNIE BOGGS, | ) ) | |
| Defendant. | ) ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

On referral from District Judge Caldwell (D.E. 776), the Court considers reported violations of supervised release conditions by Defendant Ronnie Boggs. Judge Thapar entered a judgment against Defendant in July 2015 after he pleaded guilty to one count of conspiracy to distribute oxycodone (21 U.S.C. §§ 841(a)(1), 846). D.E. 613. He was sentenced to 98 months of imprisonment and three years of supervised release. *Id*. at 2-3. Defendant was released from custody on November 9, 2018.

**I.**

On September 6, 2019, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. Before describing the violations, the Report notes:

> While in the custody of the Bureau of Prisons (BOP), the defendant completed the Residential Drug Abuse Program (RDAP), and participated in transitional counseling at the Glencairn Center, while lodged at Dismas Charities in Manchester, Kentucky. The defendant obtained a High School Equivalency Diploma from the Commonwealth of Kentucky on January 11, 2019. Boggs successfully completed outpatient substance abuse treatment at Cumberland River Behavioral Health in Manchester, Kentucky, on March 31, 2019.

The Report charges two violations. According to the Report, "On September 5, 2019, the defendant submitted a urine sample that appeared to test positively for methamphetamine, via instant testing device. The defendant admitted to using methamphetamine five to six times over the last week, and signed a Prob 4-Positive Urinalysis Admission Report."

Violation #1 charges a violation of the condition that prohibits Defendant from possessing or using any controlled substance except as prescribed by a physician. Based on Defendant's admitted use of methamphetamine, this is a Grade C violation.

Violation #2 charges a violation of the condition that Defendant not commit another federal, state, or local crime. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's methamphetamine use, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

## II.

On September 19, 2019, the Court conducted an initial appearance on the violation allegations pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure. D.E. 778. Defendant knowingly, voluntarily, and intelligently waived his right to a preliminary hearing. *Id*. The government moved for interim detention; Defendant requested release. *Id*. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id*.

At the final hearing on October 1, 2019, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 781. Defendant competently entered a knowing, voluntary, and intelligent stipulation to both violations. *Id*. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for the violations as described in the Report and the United States thus established Violations #1 and #2 under the standard of § 3583(e).

### III.

The Court has evaluated the entire record, the Report and accompanying documents, and the sentencing materials from the underlying Judgment. Additionally, the Court has considered all the 18 U.S.C. § 3553 factors imported into the § 3583(e) analysis. Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's underlying conviction for oxycodone distribution conspiracy is a Class C felony. This results in a 24-month maximum period of incarceration upon revocation pursuant to § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under Section 7B1.1, Defendant's admitted conduct in Violation #2 qualifies as a Grade B violation. Given Defendant's criminal history category of VI (the category at the time of the conviction) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter Seven, is 21 to 27 months. U.S.S.G. § 7B1.4(a). By effect of the 24-month statutory maximum, the effective Guidelines Range is 21 to 24 months.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's drug trafficking conviction does not carry a maximum term of supervised release. 18 U.S.C. § 3583(h); 21 U.S.C. § 841(b)(1)(A)(viii).

---

[1] *See* U.S.S.G § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

## IV.

At the final hearing, the government requested revocation with twelve months of imprisonment—a substantial variance downward from the Guidelines Range. The defense requested two months of imprisonment. The parties agreed that two years of additional supervised release would be appropriate.

Counsel for the government was "really torn about the outcome" of these proceedings. On one hand, Defendant's criminal history (including the underlying conviction) could support a substantial sentence. His criminal history category is VI, and his convictions include drug crimes and manslaughter. Defendant had a managerial role in the underlying offense, which was a large-scale oxycodone distribution conspiracy. He was on probation at the time of the underlying federal offense, and his parole was also revoked three times.

On the other hand, Defendant's probation officer had described him as being "near perfect" during supervision. Defendant was also remarkably honest in that he admitted using methamphetamine five or six times, not just once. Counsel for the government also believed Defendant was in a much "better spot" then he was in 2012. The government stipulated that Defendant turned himself in on the supervised release violation warrant. Defendant was not home when the Marshal came to serve the warrant. But Defendant received a phone call and he returned home immediately, knowing he would be arrested.

The government argued that Defendant needed more than a "slap on the wrist" in light of the seriousness of his violation conduct and criminal history. Yet the Guidelines Range seemed overly punitive. The government did not want it to look like "we'll throw the book at him no matter what he does."

The government stressed that Defendant cannot make a single bad decision in regard to controlled substances because doing so made him fall "off the wagon hard." The government argued this lesson could be instilled with a below-Guidelines sentence of twelve months' incarceration, followed by two years of supervised release with no new conditions.

The defense called Defendant's probation officer, Nick Jones, to testify. Officer Jones explained that Defendant had been "near perfect" in that he did everything Officer Jones asked him to do and completed all goals very quickly. Defendant had never acted aggressively toward Officer Jones, and he did far more than the bare minimum required of him.

According to Officer Jones, Defendant was released on November 11, 2018, and he completed his GED on January 11, 2019. Defendant completed the RDAP program in prison. He also completed an outpatient treatment program on March 21, 2019. This was a twice-a-month program at Cumberland Regional Health in Manchester.

Officer Jones explained that, prior to his release in November, Defendant spent some time at the Dismas Charities halfway house in Manchester. This was the source of the "transitional counseling" mentioned in the Report. Officer Jones did not recall how long Defendant was at the halfway house. He has seen stays as short as two weeks, but as long as six months. Officer Jones said Defendant was drug-tested at the halfway house and did not have any positive results. Officer Jones said he was not aware of Defendant being employed, but he knows Defendant receives Social Security benefits.

The defense also called Defendant to testify. When asked to explain what happened, Defendant said he had free time and went to visit some family members. Typically, he avoids his family because they are drug users. But Defendant said he wanted to ask his brother to do some work for him to prep a mobile home for rental. Defendant's brother offered him

methamphetamine, and he "fell off the wagon." Although he knew his brother was a drug user and a bad influence, Defendant said he thought he was strong enough and he just wanted to help a family member. Defendant said it was a relapse; he has an addiction "deep down" inside him he needs to work on, and he needs to stay around positive people. Defendant said he wants to get involved with Narcotics Anonymous or Alcoholics Anonymous so he can have a sponsor and be around people who will support him in his fight with addiction. He said he plans to be honest with his girlfriend and believes she can help him stay away from drug users.

Defendant said he plans to use his GED to enroll in college. He hopes to obtain a federal grant and take business classes at Eastern Kentucky University's Manchester campus. He hopes to obtain a better job and get off Social Security.

Concerning the sentence, the defense acknowledged that Defendant's extensive criminal history cannot be ignored. But counsel urged the court to focus on how Defendant had been taking advantage of the good opportunities presented to him. He had been a "near perfect" supervisee but experienced a week of failure. He has been completely honest, even going so far as to disclose multiple doses of methamphetamine and to turn himself in. Although revocation is necessary, the Guidelines Range, the defense argued, is inappropriate. The defense requested two months of imprisonment as sufficient to "get the message across." The defense suggested that if the Court was inclined to accept the government's recommendation, that the Court consider twelve months and a day instead.

The defense asked for an additional condition that Defendant attend Narcotics Anonymous or Alcoholics Anonymous meetings once or twice a week. The government stated that the existing conditions would allow the Probation Office to enroll Defendant in such programs at the probation officer's discretion.

Defendant persuasively addressed the Court and apologized to the Court and his family.

**V.**

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range. Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). Subsection 3583(g)(1) calls for revocation when the defendant is found to have possessed a controlled substance in violation of the mandatory condition that the defendant not unlawfully possess a controlled substance. Subsection 3583(d) provides an alternative to revocation and imprisonment when a drug treatment program is appropriate. *See Crace*, 207 F.3d at 835. Neither side argued for treatment as an alternative to incarceration.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

The Court first considers the nature and circumstances of Defendant's underlying conviction. This case is one of the most dangerous drug-trafficking conspiracies in this Court's experience. And Defendant was found to be a manager or supervisor involving five or more participants. PSR ¶ 26.

The Court next considers Defendant's history and characteristics and the need to deter criminal conduct and protect the public. Defense counsel acknowledged that Defendant's criminal history (a Category VI) was "terrible" and "atrocious." His crimes have certainly

harmed his community. Yet the parties agree that Defendant has cleaned up his act on supervision. There are positive aspects to his character, and Defendant should take pride in the progress he has made. Defendant already has a sponsor in Officer Jones. He also has a supportive girlfriend. Attending college will help him have greater stability and less free time. Defendant must be more careful to avoid the temptation of drugs because he makes poor decisions when using drugs and becomes dangerous.

Another factor is the need for additional training or treatment. As discussed, Defendant has received treatment, including the RDAP program in prison. He has been given tools to deal with temptation. Yet, upon Defendant's request, the Court will recommend adding some new language to his existing supervision condition concerning drug treatment.

The Guidelines suggest the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). The breach of trust here is significant in that Defendant used methamphetamine—a strong drug he had not used in a very long time—on multiple occasions.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Here, the Court recommends a sentence of twelve months and a day. This is below the Guidelines Range of 21 to 24 months. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *United States v. Johnson*, 640

F.3d 195, 205 (6th Cir. 2011) (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

Here, a below-Guidelines sentence is appropriate because the Range is overly punitive in light of Defendant's exemplary behavior on supervision. The Range is driven by Defendant's criminal history, which all parties admit is terrible. But Defendant, now in his late fifties, is making real progress in his life. He was a model supervisee and he has a plan in place to improve his situation in the future. The violations occurred when Defendant succumbed to temptation by a meth-using family member. As he heard at the final hearing, Defendant simply must acknowledge his weakness toward drugs and make greater efforts to avoid situations where he would be tempted. A sentence of twelve months and one day will also provide an incentive for Defendant to do well while incarcerated and earn good-time credit.

## VI.

Based upon the foregoing, the Court **RECOMMENDS**:

(1)  That, upon his stipulation, Defendant be found guilty of Violations #1 and #2.

(2)  Revocation with a term of imprisonment of twelve months and one day, followed by 24 months of supervised release.

(3)  Reimposition of the existing conditions (D.E. 613), with the following italicized addition to the second Special Condition (*id*. at 4):

> The defendant shall participate in a substance abuse treatment program and shall submit to periodic drug and alcohol testing at the direction and discretion of the probation officer during the term of supervision, if deemed necessary. Said program may include one or more cognitive behavioral approaches to address criminal thinking patterns and antisocial behaviors. The defendant shall pay for the cost of treatment services to the extent he is able as determined by the probation officer. *The USPO*

> *shall evaluate whether participation in Narcotics Anonymous or Alcoholics Anonymous is appropriate for Defendant, and Defendant shall participate in such a program at the discretion of the probation officer.*

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). Pursuant to Rule 59(b)(2), any party wishing to object **SHALL** do so by an appropriate filing in the record within **FIVE DAYS** after being served with a copy of this recommended decision. Any party may object to any or all portions of this recommendation for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Caldwell's docket upon submission. If Defendant chooses to waive allocation, he **SHALL** do so on or before the deadline for filing objections.

This the 2nd day of October, 2019.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge